ORIGINAL

Paid $1/9

1  Yitai Hu (State Bar No. 248085) (yitai.hu@alston.com)
   Elizabeth H. Rader (State Bar No. 184963)(elizabeth.rader@alston.com)
2  Two Palo Alto Square
   3000 El Camino Real
3  Suite 400
   Palo Alto, CA 94306-2112
4  Telephone: (650) 838-2000
   Facsimile: (650) 838-2001
5
   Attorneys for Plaintiff
6  MOLETECH GLOBAL HONG KONG LTD

**Filed**

E-filing

JAN 0 5 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

7

8                        UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                              San Jose Division

11  MOLETECH GLOBAL HONG KONG LTD          Case No.
12  Organized and Incorporated Under The Laws
    Of Hong Kong
13
        Plaintiff,                         **C 09  00027**
14
                                           **JURY TRIAL DEMANDED**        HRL
15      vs.

16  POJERY TRADING CO. of Taiwan, and
    POTTERY TRADING USA, a California
17  Corporation,

18      Defendant.

19          Plaintiff Moletech Global Hong Kong Ltd ("Moletech Global"), for its Complaint against

20  Defendants Pojery Trading Co. of Taiwan and Pottery Trading USA, alleges as follows:

21                                  **THE PARTIES**

22      1.          Plaintiff Moletech Global Hong Kong Ltd. ("Moletech Global") is a corporation

23  organized and incorporated under the laws of Hong Kong, with a primary place of business at 38F Lippo

24  Centre, Tower One, 89 Queensway, Hong Kong.  Moletech Global, a provider of environmental and

25  energy solutions, was formed in 2007 for the specific purpose of being the global distributor of the

26  Moletech Fuel Saver, an aftermarket auto accessory that, properly installed in a gasoline or diesel-

27  powered motor vehicle, improves fuel economy and gas mileage.

28

2.   Defendant Pojery Trading Co. ("Pojery") of Taiwan is a corporation organized and incorporated under the laws of Taiwan with a principal place of business at 11 Sin-de Road, San Chung City, Taipei, Taiwan 24158. Pojery manufactures the Moletech Fuel Saver.

3.   Defendant Pottery Trading USA ("Pottery USA"), an affiliate of Pojery, is a California corporation licensed to do business in California, with a primary place of business at 402 West Broadway, Suite 400, San Diego, California.

## JURISDICTION AND VENUE

4.   Plaintiff Moletech Global does business in this district through its United States subsidiary, Mtech Fuel Saver Inc., a California corporation with a primary place of business at 267 E Campbell Ave, Suite 200, San Jose, California.

5.   Defendants Pojery intentionally availed itself of the privilege of doing business in the State of California, by providing in an Agreement between the parties that Defendant Pottery Trading, USA would be a California distributor for Moletech, by establishing a website specifically for its distribution of Moletech Fuel Savers in California, by having employees in California and by making plans to create a network of thousands of Moletech Fuel Saver installers in California.

6.   Defendant Pojery is the registered owner of the domain name Moletech.com. The URL www.Moletech.com is directed to an IP address associated with a web server physically located in Half Moon Bay, California. Pursuant to its Agreement with Defendant Pojery, Plaintiff Moletech Global promoted the website at www. moletech.com, among other things, using Google's "adwords" service, pursuant to an agreement with Google, a company headquartered in Mountain View, California within this judicial district.

7.   Defendant Pottery Trading USA is a California corporation with a primary place of business at 402 West Broadway, Suite 400, San Diego California.

8.   This Court has personal jurisdiction over Defendants as they have engaged in conduct that violates United States copyright law, computer fraud and abuse laws, electronic communications laws and federal and common laws of unfair competition and have done so knowing that this conduct caused harm to plaintiff in the United States and in this judicial district.

9.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

Complaint            -2-

1331, because Defendants' wrongful conduct gives rise to liability under federal statutes, including 18 U.S.C. §§ 1030, 2707 and 2520.

## FACTUAL BACKGROUND

10.　　　　Hope Island Central Developments Pty Ltd., ("Hope Island") an Australian Company, has been importing products from Asia since 1981 and from Taiwan since 1985. Hope Island has established distribution channels worldwide for auto parts and accessories.

11.　　　　Defendant Pojery Trading Company is an affiliate of Pottery Trading Company of Taiwan, primarily a printing and ceramics business. Pojery had little or no experience with marketing and distributing auto parts, and little or no distribution network outside Taiwan when it acquired rights in the Moletech Fuel Saver, including several patents and patent applications. Therefore, Pojery needed a global distributor with the requisite expertise and distribution networks in order to maximize the product's commercial potential. Pojery's principals, Weiling Kuo and Ken Chang, also represented that they wished to become officers of a distributor that is a United States-based company (Defendant Pottery) in order to obtain United States visas and become legal United States residents.

12.　　　　In June 2007, Pojery entered into discussions with Hope Island and its CEO, Andrew Kelly, concerning promotion and distribution of the Moletech Fuel Saver. Pojery represented, among other things, that it had the ability and capacity to manufacture 600,000 pieces of the Fuel Saver per year.

The Global Exclusive Distributor Agreement

13.　　　　On August 10, 2007, Pojery and Hope Island, trading as Moletech Global, entered into a Global Exclusive Distributor Contract ("the Agreement"). A copy of the Agreement is attached as Exhibit A to this Complaint.

14.　　　　The Agreement provided that Moletech Global has the right to wholesale distribute market and retail the Fuel Saver products within the global market and that Pojery shall not export or sell directly to any other parties outside Moletech Global without its prior approval. The Agreement further provided that all (downstream) distributors could only purchase goods directly from Moletech Global.

Complaint　　　　　　　　　　　　　　　　　　-3-

15.     The Agreement provided that Moletech Global would be responsible for the provision of advertising effort and after-sale service and the expenses incurred by the sale of the products.

16.     Moletech agreed to make an initial order of $2,000,000 U.S. worth of product and to meet certain purchasing targets every year.

17.     The Agreement had an initial term of five years (expiring in 2012), with rolling five year extensions so long as Moletech Global met its purchasing targets.  Moletech Global has met all of the purchasing targets set in this Agreement.

18.     In a section entitled "Promotional Strategy and Sales Target," the Agreement expressly recognized that Moletech Global wished to receive orders in the capacity of 80,000 pieces at one time and that Pojery needed to ensure that it could fulfill the delivery schedule for such large orders. Moletech Global agreed to keep Pojery fully informed and Pojery agreed to meet the conditions of Moletech Global's customer orders and accept liability for goods delivered late.

19.     In a section entitled "Warranty," Pojery represented and warranted literature from its sales brochure, TV advertisements and retail display cartons printed by Pojery.  Moletech Global insisted upon and negotiated for this provision because it needed to control the integrity of the Moletech Fuel Saver brand.

20.     The Agreement further provided that Defendant Pottery Trading Co., USA would be the "operating company for Moletech USA" and that Moletech Global would assist Weiling Kuo and Ken Chang in applying for United States visas.  All goods sold in the USA, however, were to be purchased from Moletech Global and its United States subsidiary, Mtech Fuel Saver Inc.

21.     The parties agreed upon additional terms and amended the Agreement on February 20, May 9, July 17, and October 7, 2008.  True copies of these amendments are attached as Exhibits B, C, D, E and F.

Moletech Global's Performance

22.     In August 2007, Moletech Global Hong Kong was launched.  Moletech Global, via Hope Island, placed its initial $2,000,000 order and paid for that initial order in full.

23.     Moletech Global has met all subsequent purchasing targets.  On July 17, 2008,

Complaint                                          -4-

1  following a board meeting, the parties agreed to modify the Agreement such that Moletech Global

2  would order $500,000 worth of product for August 8 payment and $250,000 every other month of the

3  year.   The parties agreed that this term replaced the contract terms for the order quantity for each year in

4  the 2007 Agreement.

5       24.          Moletech Global ordered $500,000 worth of product and made the required

6  $500,000 payment on or before August 8, 2008.  Moletech Global made orders for at least $250, 000 in

7  each remaining month of 2008.

8       25.          Moletech Global has spent the past fifteen months promoting and advertising the

9  Moletech Fuel Saver Product.   The parties agreed that Moletech Global would take over management of

10 the website that Pojery had created to advertise the Moletech Fuel Saver.  From the beginning, Moletech

11 Global developed its global distribution strategy around website promotion and using email updating its

12 customers that enquired about Moletech Fuel Saver from the many trade fairs at which Moletech Global

13 exhibited on the latest developments.   Moletech Global, at its own expense, completely redesigned and

14 replaced the content of the website with content it developed specifically for the websites at

15 www.moletech.com and www.moletech.us ("the Moletech websites").  Moletech Global owns the

16 copyright in this original website content.  Moletech Global also used e-mail addresses accessed through

17 the Moletech websites to communicate with its downstream distributors, potential customers and

18 customers.

19      26.          Moletech Global arranged for commercial photos of the Moletech Fuel Saver

20 product and wrote the installation instructions.   As part of its policy of ensuring customer satisfaction,

21 Moletech Global also offers its own 100% money back guarantee warranty on the Moletech Fuel Saver,

22 which is printed on the owner's manual provided with the product.  The warranty agreement states "If

23 you do not experience fuel savings, increased horsepower or improved performance within 90 days of

24 having your Moletech Fuel Saver installed, please visit www.moletech.us/satisfaction."

25      27.          One of Moletech Global's marketing strategies was to submit the product to

26 various government authorities and academic institutions for testing and certification.   While it had no

27 obligation to do so under the Agreement, Moletech Global spent twelve months in various trials to prove

28 that the Moletech Fuel Saver delivers fuel savings.  For example, Moletech Global arranged for tests by

1    the University of Western Australia, UTAC in France, TUV in Germany, Bern University Switzerland,

2    Millbrook Laboratories UK, Orbital Australia, Polytechnic University Hong Kong, ETC HK Limited,

3    CNAS Beijing Testing Laboratory, DOTARS Australia, Diesel Test Australia, the California Air

4    Resources Board (ARB) and the AAA of Southern California.

5          28.      Another of Moletech Global's marketing strategies has been to allow large

6    customers to conduct their own trials of the Moletech Fuel Saver in their own fleets of vehicles to satisfy

7    themselves that the product performs as warranted.  This strategy is time consuming, requiring up to a

8    year to secure a large institutional customer, but a large customer that places an order for products for its

9    whole fleet after such a trial period becomes an effective endorser of the product, strengthening the

10   Moletech Fuel Saver brand and increasing goodwill and consumer confidence.

11         29.      Moletech Global employed a public relations firm and held press conferences in

12   the process of promoting the Moletech Fuel Saver.  Moletech Global has spent close to $1,000,000 U.S.

13   on global promotion for the Moletech Fuel Saver, including $300,000 on a single advertising campaign

14   gaining United States exposure.  As part of its promotion, Moletech Australia also sponsored a carbon-

15   trading conference.

16         30.      At its expense, Moletech Global set up sales offices in the United States, Hong

17   Kong and Australia.  As of August, 2008, Moletech Global HK had distributors in 41 countries.

18         31.      Another part of Moletech's strategy has been to demonstrate the Moletech Fuel

19   Saver at numerous trade shows around the world.  Since entering into the Agreement, Moletech Global

20   has sent staff to over thirty international events to promote the Fuel Saver.  In January, 2008, for

21   example, Moletech presented its products in Las Vegas at the Consumer Electronics Show, one of the

22   largest trade shows in the United States.

23         32.      Demonstrations at the Consumer Electronics Show and the launch of the product

24   in January, 2008 created significant interest in the Moletech Fuel Saver, including generating the

25   greatest number of hits in one day to the Moletech.us website.

26

27   Pojery's Breach of The Exclusivity Provision

28         33.      Unfortunately, almost as soon as the Agreement was signed, Pojery conducted its

business unprofessionally and contrary to the Agreement's terms.

34.         Pojery has completely ignored Moletech Global's exclusivity rights, and instead sold products to  numerous different third parties that are promoting and distributing Moletech Fuel Savers, unfairly competing with Moletech Global and its authorized distributors in violation of the Agreement.

35.         Soon after the Agreement was signed, Moletech Global discovered that Pojery was offering Moletech Fuel Savers on the United States website of the online auction site eBay, making sales and shipping the products to addresses in Moletech Global's exclusive territory.   Moletech Global complained to Pojery and Pojery apologized and promised to correct the problem, but unauthorized sales on eBay continue to the day of this filing.  On information and belief, the unauthorized eBay sellers obtained, and continue to obtain, product directly from Pojery.

36.         Defendant Pojery also supplied Moletech Fuel Saver stock directly to Pottery Trading USA, in direct and flagrant breach of the Agreement's provision making Moletech the exclusive worldwide distributor.

37.         Pojery has also directly supplied other companies in the United States with Moletech Fuel Saver stock in violation of the Agreement's exclusivity provision.

38.         In October, 2008, Moletech Global learned that Pojery had transferred ownership of its United States application for the technology used in the Moletech Fuel Saver to Pottery Trading USA and that Pottery Trading USA is the owner of record of U.S. patent 7,377, 269 issued May 27, 2008.

39.         On November 9, 2008, Moletech Global learned from its Texas distributor that a man named Michael Cheng was claiming to be the exclusive Moletech representative in Texas. On information and belief, Michael Cheng claimed that he had just moved to Houston and distributed business cards bearing the URL www.tgtc-online.com.

40.         Moletech Global personnel accessed the website referenced by their Texas distributor and found that a company called Turbotec Global Trading Co. ("TGTC") had copied a great deal of material from the Moletech.us website and placed it on the tgtcp-online.com website.  This website was and still is unlawfully soliciting orders for Moletech Fuel Savers.  Upon information and

belief, Pojery has entered into an agreement with TGTC to promote and distribute the Moletech Fuel
Saver in violation of the Agreement.

41.      Moletech Global's Andrew Kelly immediately complained to Pojery and to
Weiling Kuo about Michael Cheng and the unauthorized TGTC website and its unauthorized use of
Moletech Global's copyrighted material and of Pojery's trademarks and other intellectual property and
asked whether Pojery was supplying TGTC with product.

42.      On November 11, Weiling Kuo responded to Mr. Kelly and claimed to have no
knowledge of TGTC or its website. Moletech Global later spoke to one of the TGTC employees, who
confirmed that Pojery was supplying product directly to TGTC.

Pojery's Misrepresentations and Breach of Its Warranty of Product Literature

43.      Despite Pojery's warranty of the truthfulness of the literature it printed for the Fuel
Saver product, in 2007 and up to October 2008, Moletech Global discovered that Pojery had seriously
misrepresented the performance of the Moletech Fuel Saver on the product packaging and other
literature.

44.      Specifically, boxes and product literature that Pojery provided state that the device
reduces fuel consumption by twenty percent for gasoline, 15% for LPG and 10% for diesel vehicles. In
fact, tests show the product saves fuel but results vary based on a number of factors.

45.      Additionally, Pojery's original literature claimed and Moletech Global believed
based on Pojery's warranty, that one sensor would treat sixty liters of fuel and two sensors would treat
one hundred and fifty liters of fuel. Pojery later admitted that one sensor treats fifty liters of fuel and
two sensors will treat one hundred liters. Not only was Pojery's original literature misleading, but as a
result, when these inflated claims were put to the test, they failed. As a result, customers were lost that
would have bought the product if Pojery had made accurate claims for the product's performance.

46.      As a direct result of Pojery's failure to ensure that all statement on the packaged
products it supplied to Moletech Global were truthful, Moletech Global's distributor was accused of
false advertising in Australia, one of its major markets. In May, 2008, Moletech Global's distributor
was served in Australia by the Department of Consumer and Employment Protection ("DOCEP") with

1  documents that forced it to stop selling in Australia because of the false claims made by Pojery in the

2  literature.

3      47.      DOCEP agreed that Moletech Global's Australian distributor could resume selling

4  in Australia if it could supply scientific tests to support Pojery's fuel saving claims.  Moletech Global

5  advised Pojery that it urgently needed to provide the tests to back up its claims.   Pojery repeatedly

6  promised Moletech Global that Pojery would have SGS, a recognized testing authority, complete the

7  tests to satisfy the Australian authorities but it never did so.

8      48.      As a direct result of Pojery's deliberate or reckless misrepresentations in breach of

9  the Agreement, Moletech Global's distributor was forced to stop selling the Moletech Fuel Saver in

10  Australia and go into liquidation.  It lost its Australian distributor and sustained significant monetary

11  damages as well as loss to its goodwill and reputation with its distributors in Australia and elsewhere,

12  and its distributor is facing charges of misrepresentation in Australia, all as a result of Pojery's failure to

13  ensure that statements in the product literature are accurate.

14      49.      On one occasion, Pojery digitally altered a genuine report from the University of

15  West Australia concerning tests conducted on the Fuel Saver and caused this digitally-altered document

16  to be posted on a website of their California based customer.  When Moletech Global learned of this, it

17  demanded that Pojery remove it and refrain from using digitally altering documents in Moletech Fuel

18  Saver literature or other marketing efforts.

19      50.      As a result of Pojery's failure to ensure that statements in the product literature are

20  accurate, Moletech Global also has faced complaints of false advertising in the United States.  Moletech

21  Global complained to Pojery in October 2007 about the claims on the packaging/literature.   At

22  Moletech Global's expense it paid Pojery $50,000 to re-package the goods with Pojery's suggested new

23  lower claims for fuel saving when Pojery refused to fund the cost.

24  Pojery's Failure To Deliver Orders Moletech Global Placed and Paid For.

25      51.      Beginning in June of 2008, Pojery began frustrating Moletech Global's supply.

26  Moletech Global continued to place orders for the product and make payments to Pojery pursuant to the

27  agreement Pojery, however, failed to deliver the conforming goods in a timely manner.

28      52.      Moletech Global paid $1,238,520 for its contracted purchases until August 2008

on July 30, 2008, but Pojery failed to deliver the goods.  These goods were partially delivered at the end of November, 2008 and completely delivered on the 15th December 2008.

53.  Moletech Global paid the amount of $500,000 on August 8th for the August order and these goods were not delivered till the 15th December 2008

54.  Moletech Global paid the amount of $250,000 on September 8th for the September order and these goods were not delivered till the 15th December 2008

55.  Despite Pojery's failure to perform, Moletech continued placing orders and paying for them.

56.  As a direct result of Pojery's failure to live up to its contractual obligations, Moletech was forced to stop selling the Moletech Fuel Saver in Australia and see its distributor go into liquidation at the same time.  It lost its Australian partner and sustained significant monetary damages as well as loss to its goodwill and reputation with its distributors in Australia and elsewhere.

57.  When Pojery finally did deliver products, some of them were severely defective. In order to work properly, Moletech Fuel Saver sensor must have holes in their caps.  Pojery supplied many defective sensors with no holes.

58.  By September, Moletech Global had become extremely concerned about the breaches described above as well as numerous other outstanding issues involving communication, product literature Pojery was not providing, unauthorized online sales, website issues, customer service issues, faulty goods and similar problems caused by Pojery.  On September 8, 2008, Andrew Kelly of Moletech Global formally notified Ken Chang of Pojery, in writing, that if the goods ordered in the July, August and September orders were not shipped before the next payment date in October, Pojery would be in breach and Moletech would have no choice but to delay the October payment.

59.  With the goal of resolving the various problems Moletech Global was experiencing with Pojery, especially the undelivered paid goods, Moletech Global and Andrew Kelly met with Pojery, Weiling Kuo and Ken Chang in person in Taiwan on October 7-8th, 2008.   At this meeting, Moletech Global presented Pojery with a written list of forty outstanding issues to be addressed.   Again, Pojery made promises to correct various problems but failed to follow through.

60.  On December 3, 2008 Moletech Global, by its Hong Kong counsel, wrote to

1   Pojery noting Pojery's recent partial delivery of stock that was overdue and stating that the months-late

2   delivery and the non-delivery of the additional stock were breaches and that if Pojery terminated the

3   contract, Moletech would sue for damages for these breaches.

4

5   Pojery's Unlawful Purported Termination of the Agreement and Seizure of the Moletech Websites and

6   Interception of Moletech Global's E-Mails.

7       61.        Instead of taking steps to correct its numerous and continuing breaches, on

8   December 17, 2008, Pojery wrote to Moletech Global, purporting to terminate the Agreement and forbid

9   any future distribution of product.

10      62.        Also on December 17, 2008, Pojery wrote to Moletech Global, stating that, as the

11  agreement was terminated, Pojery would manage the websites at www.moletech.us and

12  www.moletech.com.  Pojery offered to forward to Moletech "any e-mail or letter attention to your

13  name."  In other words, it would intercept other correspondence from Moletech's distributors and

14  customers and misappropriate such  orders and opportunities for itself.  Pojery took down the extensive

15  content that Moletech had created and placed on the Moletech.com website, which is a primary contact

16  point for Moletech's distributors, and replaced it a home page stating that the site is "under construction,

17  coming soon" and contact: custserv@moletech.us .

18      63.        Pojery knew that these websites were essential to Moletech's communications with

19  its customer and distributors.   Moletech Global currently has over 60,000 units of inventory in boxes

20  with www.moletech.us printed on them.  Moletech Global's customers and distributors are accustomed

21  to communicating with Moletech's Global's staff using general e-mail addresses including

22  dealer@moltech.us, info@moletech.us and sales@moletech.us.  Pojery nevertheless intentionally

23  prevented Moletech's access to e-mails sent to these addresses through the websites.  This act is a

24  serious infringement of Moletech's proprietary rights to use and conduct its business through the

25  websites.

26      64.        On information and belief, now that Moletech Global has spend approximately two

27  million dollars, worldwide to build up demand for the Fuel Saver product and is ready to get large deals

28  with vehicle fleets and large retailers, Pojery intends to bypass Moletech Global and distribute directly

Complaint                                    -11-

1   through Moletech's distributors or other third parties or both.   Pojery has copied Moletech Global's

2   copyrighted website content created for the Moletech websites and given this content to numerous third

3   parties, such as TGTC, for their use in marketing the Moletech Fuel Saver and competing with Moletech

4   Global.

5        65.        Numerous third parties have obtained Moletech Global's copyrighted website

6   content and uploaded it to their own websites for the sole purpose of marketing the Moletech Fuel Saver

7   and competing with Moletech Global.  On information and belief, Pojery has assisted and facilitated the

8   misappropriation of Moletech Global's copyrighted content.

9        66.        Defendant Pojery also attempted to induce Moletech Global's Canadian

10  distributor, Moletech Canada by directly offering product liability insurance from Pojery while Pojery

11  essentially were blocking Moletech Global from gaining insurance.

12       67.        The impact of Pojery's seizure of the Moletech websites, combined with news of

13  the claims against Moletech Global in Australia, has been immediate and severe.   Several of Moletech's

14  authorized distributors have cancelled large orders or not placed orders that they previously stated they

15  would place.

16                              **FIRST CAUSE OF ACTION**

17                   **VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**

18                      **(18 U.S.C. §§ 1030(a)(2)(C) & a(4) & a(5)**

19       68.        Moletech realleges and incorporates by reference each of the foregoing paragraphs

20  as if fully set forth here.

21       69.        Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §

22  1030(a)(2)(C) by intentionally accessing a computer used for interstate commerce or communication,

23  without authorization or by exceeding authorized access to such a computer, and by obtaining

24  information from such a protected computer.

25       70.        Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §

26  1030(a)(4) by knowingly, and with intent to defraud Moletech Global's distributors and customers,

27  accessing a protected computer without authorization or by exceeding authorized access to such a

28  computer, and by means of such conduct, furthered the intended fraud and obtained one or more things

Complaint                                    -12-

of value, including but not limited to Moletech's worldwide distributor and customer database.

71.   Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the transmission of a program, information, code, or command and, as result intentionally causing damage without authorization to a protected computer.

72.   As a result of Defendant's wrongful conduct, Moletech Global suffered losses greater than $5,000 as a result of expenses incurred in registering new domain names, locating new hosting servers and creating new websites to provide the information formerly provided on the websites and new channels of communications for its downstream distributors and customers, and in contacting its downstream distributors and customers informing them of the changes the lost profits from business opportunities usurped by Pojery and Pottery USA.

## SECOND CAUSE OF ACTION

## ELECTRONIC COMMUNICATIONS PRIVACY ACT

### 18 U.S.C. S 2707 and 2520 et seq.

73.   Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

74.   Defendants intentionally intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept, electronic communications.

75.   Such intentional interceptions and endeavors were for tortious purposes, specifically to read and make use of communications intended for plaintiff and its staff.

76.   On information and belief, Defendants have disclosed certain of the e-mails so intercepted to others, knowing that such were illegally obtained.

77.   As a result, Plaintiff has been damaged as alleged herein and pursuant to section 2707 of the Electronic Communications Privacy Act, plaintiff is entitled to compensation for his damages, to the Defendant's profits and/or $1,000 per violation, and punitive damages and attorneys' fees.

1

**THIRD CAUSE OF ACTION**

2

**Copyright Infringement (17 U.S.C. §§ 501, Et. Seq.)**

3      78.      Moletech realleges and incorporates by reference each of the foregoing paragraphs

4 as if fully set forth here.

5      79.      Moletech owns the copyright in the original content it developed specifically the

6 Moletech websites, which copyrighted material was first created, fixed in tangible form and published

7 outside of the United States.

8      80.      Defendants had actual knowledge of Moletech Global's copyright interest.

9      81.      Defendants' copying of Moletech Global's copyrighted website material, verbatim

10 or in derivative works, constitutes willful infringement of Moletech Global's copyright interest.

11      82.      Each occasion on which Defendants or any of them distributed a copy of Moletech

12 Global's copyrighted website material without its permission constitutes a separate incident of willful

13 infringement.

14      83.      Each third party that has uploaded Moletech Global's copyrighted website material

15 to an unauthorized website infringes Moletech Global's copyright interest.

16      84.      By distributing copies of Moletech Global's copyrighted website material to third

17 parties with the knowledge that those third parties will copy it verbatim, and/or use it to create derivative

18 works, Defendants have induced those third parties' infringement and are therefore liable for willful

19 contributory infringement.

20      85.      As a result of Defendants' violations of United States copyright law, Moletech

21 Global is entitled to actual damages and/or statutory damages for willful infringement, preliminary and

22 permanent relief, costs and attorneys' fees.

23

**FOURTH CAUSE OF ACTION**

24

**BREACH OF CONTRACT**

25      86.      Moletech realleges and incorporates by reference each of the foregoing paragraphs

26 as if fully set forth here.

27      87.      The Agreement is an enforceable contract between the parties.

28      88.      Moletech has complied with all its obligations under the Agreement.

Complaint                                                   -14-

89.        Pojery's purported termination of the Agreement was without justification and but for Pojery's unjustified termination, Moletech would have continued to meet its purchasing targets, with increased orders every six months and would have sold the purchased goods at a profit for at least the entire five year term of the agreement, which further would have been automatically renewed each year.

90.        Pojery has breached the Agreement by failing to timely deliver goods ordered that were fit for the purpose intended.

91.        Pojery has further breached the Agreement by making false and misleading statements on product literature and packaging.

92.        Pojery has further breached the agreement by supplying products directly to Pottery Trading USA and other third parties.

93.        Moletech has given Pojery numerous notices of breach and of the damages caused by such breaches and given Pojery numerous opportunities to cure its breaches but Pojery to this day is in breach.

94.        Pojery's breaches have caused and continue to cause injury to Moletech. Accordingly, Moletech is entitled to monetary relief as well as preliminary and permanent injunctive relief.

## FIFTH CAUSE OF ACTION

## DECLARATORY RELIEF

95.        Moletech realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

96.        On December 17, 2008, Pojery purported to terminate the Agreement.  Moletech denies that it has breached the Agreement and denies that the purported termination is valid.

97.        As a result, a live controversy exists concerning whether Moletech has breached the Agreement.  Additionally, a live controversy exists concerning whether Pojery has breached the Agreement.

98.        Moletech has honored all of its obligations under the Agreement.

99.        Accordingly, Moletech is entitled to a judgment declaring that (i) Moletech has not breached the Agreement; (ii) Pojery has breached the Agreement and/or refused to act in good faith

Complaint                                          -15-

concerning the Parties' obligations under the Agreement; (iii) Pojery's purported termination for cause on December 17, 2008 was unlawful; (iv) Pojery's seizure of the websites at the URLs www.moletech.com and www.moletech.us was unlawful and in bad faith; (v) any attempt by Pojery to usurp Moletech's prospective business opportunities for its own is an independent and additional breach of the Agreement; in addition to whatever other relief the Court deems proper.

## SIXTH CAUSE OF ACTION

### UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.)

100. Moletech realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

101. The actions of Pojery alleged above constitute violations of California's unfair competition law.

102. As a result of Pojery's acts of unfair competition, Moletech is entitled to restitution and disgorgement, and preliminary and permanent injunctive relief, in addition to whatever other relief the Court deems proper.

## SEVENTH CAUSE OF ACTION

### UNFAIR COMPETITION (Common law.)

103. Moletech realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth here.

104. Defendants' conduct as set forth in this complaint constitutes unfair competition under the common law of the state of California.

105. Unless Defendants are restrained by appropriate injunctive relief, Moletech will suffer immediate and irreparable harm for which there is no remedy at law.

106. Moletech is informed and believes, and on that basis alleges that Defendants have wrongfully acquired gains resulting from the conduct described in this Complaint, and accepted such gains with the knowledge that such gains came from such conduct. Thus, Defendants hold the wrongfully acquired gains in constructive trust for the benefit of Moletech Global and Moletech Global is entitled to an accounting of those gains.

107. As proximate result of Defendants' conduct, Moletech Global has been damaged

1  in an amount to be proved at trial.

2

3  ### EIGHTH CAUSE OF ACTION

4  ### Intentional Interference with Prospective Economic Relations

5  108.  Moletech Global realleges and incorporates by reference each of the foregoing

6  paragraphs as if set forth fully here.

7  109.  Moletech Global had a reasonable probability of prospective economic

8  relationships with additional distributors and institutional fleet customers, and Moletech is informed and

9  believes and on that basis alleges that defendants intentionally and wrongfully induced and proximately

10  caused disruptions of those relationships.

11  110.  The independently wrongful conduct of Defendants as alleged includes, but is not

12  limited to, Defendants' breaches of the Agreement as set forth above.

13  111.  As a result of Defendants' conduct, Moletech Global has been damaged in an

14  amount to be proven at trial.

15  112.  Defendants' acts have also caused injury to Moletech Global and, unless and until

16  restrained by appropriate injunctive relief, Moletech Global will continue to suffer irreparable harm for

17  which there is no adequate remedy at law.

18  ### NINTH CAUSE OF ACTION

19  ### Negligent Interference with Prospective Economic Relations

20  113.  Moletech Global realleges and incorporates by reference each of the foregoing

21  paragraphs as if set forth fully here.

22  114.  Moletech Global had a reasonable probability of prospective economic

23  relationships with its worldwide downstream distributors and Moletech is informed and believes and on

24  that basis alleges that Defendants intentionally and wrongfully induced and proximately caused

25  disruptions of those relationships.

26  115.  Defendants knew or should have known about the economic relationship,

27  described above, and knew or should have known that these relationships would be interfered with and

28  disrupted if Defendants failed to act with reasonable care in their use of Moletech Global's distributor

Complaint                                    -17-

1  information and customer information.  Defendants failed to act with reasonable care.  Instead, they used

2  Moletech's channels of communication to direct distributor e-mail and customer e-mails to themselves

3  to take Moletech Global's opportunities for themselves.

4       116.       The independently wrongful conduct of Defendants as alleged includes, but is not

5  limited to, Defendants' breach of the Agreement, their unfounded and unjustified purported termination

6  and their subsequent seizure of the websites, removal of Moletech Global's materials formerly served

7  through those websites and their provision on the website of "contact" information designed to

8  encourage downstream distributors and customers to bypass Moletech Global and deal directly with

9  Pojery and/or Pottery.

10      117.       As a result of Defendants' acts, the above-described relationships have been

11 actually disrupted, causing certain current and prospective support clients to contract with Defendants

12 instead of with Moletech Global for supply of Moletech Fuel Saver products.

13      118.       As a result of Defendants' acts, Moletech Global has suffered economic harm,

14 including, but not limited to, loss of profits from sales to current and potential customers of Moletech

15 Fuel Saver Products, in an amount to be proven at trial.

16      119.       Defendants' acts have also caused injury to Moletech Global and, unless and until

17 restrained by appropriate injunctive relief, Moletech Global will continue to suffer irreparable harm for

18 which there is no adequate remedy at law.

19                                   **PRAYER**

20           Wherefore, Moletech Global respectfully prays for the following

21  A.  That the Court enter a judgment against Defendants and in favor of Plaintiff on all of

22       Plaintiff's claims asserted in this Complaint;

23  B.  That the Court award the full spectrum of compensatory, treble, punitive, statutory and all

24       other damages allowed by law;

25  C.  For a preliminary and permanent injunction restraining Defendants, their officers, agents,

26       servants, employees and attorneys, and those in active concert or participation with any of

27       them from:

28           1) any contact with Moletech Global's downstream distributors and customers selling

Complaint                                  -18-

1    and Moletech Fuel Saver Products

2    2) for an Order requiring Defendants to Transfer the Domain Names to Plaintiff.

3    3) for an Order requiring Pojery to return any and all monies paid by Moletech Global

4    for Fuel Saver products it cannot sell or distribute.

5    D.    That the Court declare that Plaintiff has not breached the Agreement and that

6    Defendants have breached the Agreement;

7    E.    That the Court award to Plaintiff its attorneys' fees and other costs and expense to

8    the extent allowed by law;

9    F.    That the Court award such other relief, general and special, at law or in equity to

10   which Plaintiff may be justly entitled.

Dated:  January 5, 2009

ALSTON+BIRD LLP
Two Palo Alto Square
3000 El Camino Real
Suite 400
Palo Alto, CA 94306-2112
Telephone: (650) 838-2000
Facsimile: (650) 838-2001


Attorneys for Plaintiff
MOLETECH GLOBAL HONG KONG LTD


By: _____
    Elizabeth H. Rader

1

2   Yitai Hu (State Bar No. 248085) (yitai.hu@alston.com)
    Elizabeth H. Rader (State Bar No. 184963)(elizabeth.rader@alston.com)
3   Two Palo Alto Square
    3000 El Camino Real
    Suite 400
4   Palo Alto, CA 94306-2112
    Telephone: (650) 838-2000
5   Facsimile: (650) 838-2001

6   Attorneys for Plaintiff
    MOLETECH GLOBAL HONG KONG LTD
7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                          San Jose Division

12  MOLETECH GLOBAL HONG KONG LTD          Case No.
    Organized and Incorporated Under The Laws
13  Of Hong Kong                            **JURY TRIAL DEMAND**

14       Plaintiff,

15       vs.

16  POJERY TRADING CO. of Taiwan, and
17  POTTERY TRADING USA, a California
    Corporation,
18
         Defendant.
19

20

21  Plaintiff demands a jury trial on all claims so triable.

22

23

24

25

26

27

28

    Jury Demand                          -1-

1

2    Dated:  January 5, 2009              ALSTON+BIRD LLP
3                                         Two Palo Alto Square
                                          3000 El Camino Real
4                                         Suite 400
                                          Palo Alto, CA 94306-2112
5                                         Telephone: (650) 838-2000
                                          Facsimile: (650) 838-2001
6
7                                         Attorneys for Plaintiff
                                          MOLETECH GLOBAL HONG KONG LTD
8

9
                                          By: _____
10                                            Elizabeth H. Rader

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     Jury Demand                          -2-