1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                          OAKLAND DIVISION

5

6    MOLETECH GLOBAL HONG KONG LTD.,          Case No. 4:09-cv-00027-SBA
     Organized and Incorporated Under The Laws Of
7    Hong Kong,                                **ORDER GRANTING DEFENDANTS AND
                                               COUNTER-CLAIMANTS POJERY
8                        Plaintiff,            TRADING CO. LTD.'S AND POTTERY
                                               TRADING USA, INC.'S MOTION TO
9         vs.                                  DISMISS BASED ON FORUM NON
                                               CONVENIENS**
10   POJERY TRADING CO. of Taiwan, and
     POTTERY TRADING USA, a California
11   Corporation,

12                       Defendants.
     POJERY TRADING CO. LTD.; POTTERY
13   TRADING USA, INC.,

14                       Counter-Claimants,

15        vs.

16   MOLETECH GLOBAL HONG KONG LTD.;
     MTECH FUEL SAVER, INC.; ANDREW
17   KELLY,
                         Counter-Defendants.
18

19

20

21

22        Defendants and Counter-Claimants Pojery Trading Co. Ltd.'s ("Pojery") and Pottery Trading

23   USA, Inc. ("Pottery", and collectively with Pojery, the "Defendants") have moved to dismiss this

24   action based on forum non conveniens grounds.   The Court has considered the arguments and

25   evidence presented by the parties in their papers, and at the hearing, and hereby rules as follows.

26   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

27        **A.    Defendant Pojery is a Taiwanese Corporation that Manufactures the Moletech
                  Fuel Saver**
28

Pojery was incorporated under the laws of Taiwan on March 31, 2003.   (Declaration of Wei-Ling Kuo in support of Motion to Dismiss Based on Forum Non Conveniens ("Kuo Decl.") ¶ 3).   Its principal place of business is 11th Floor, 123-3 Sin-De Road, San Chung City, Taipei, Taiwan 24158. (Kuo Decl. ¶ 4).   Pojery manufactures the Moletech Fuel Saver, which is an aftermarket automobile product that improves automobile performance, including increase of horsepower and torsion, and crease of fuel consumption and waste gas discharge.   (Kuo Decl. ¶ 5).   The Moletech Fuel Saver products are manufactured and packaged by Pojery at a factory in Taipei, Taiwan.   (Kuo Decl. ¶ 6). At all times relevant to this action, Ken Kao-Hao Chang and Weiling Kuo were responsible for the management of Pojery and its operations.   (Kuo Decl. ¶ 7).

**B.     Pottery Trading USA, Inc. is Pojery's Wholly-Owned Subsidiary**

Pottery Trading USA, Inc. ("Pottery") was incorporated under the laws of the State of California on August 17, 2004. (Kuo Decl. ¶ 9).   It is a wholly-owned subsidiary of Pojery, and is the United States marketing affiliate for Pojery.   (Kuo Decl. ¶ 10).   Wei-Ling Kuo was responsible for Pottery's operations at all times relevant to this action.   (Kuo Decl. ¶ 11).

**C.     The Global Exclusive Distributorship Contract Between Pojery and Moletech Global Hong Kong Ltd.**

In or about June 2007, Andrew Kelly, the Chief Executive Officer of Plaintiff and Counter-Defendant Moletech Global Hong Kong Ltd. ("Moletech Global"), came to Pojery's office in Taiwan, and discussed his willingness to enter into a distributorship agreement with Pojery to distribute Pojery's Moletech Fuel Saver products.   (Kuo Decl. ¶ 12).   On August 10, 2007, Pojery and Moletech Global entered into the Global Exclusive Distributorship Contract.   (Kuo Decl. ¶ 13, Exh. A).

Under the Global Exclusive Distributorship Contract, Pojery granted Moletech Global the exclusive right to wholesale, distribute, and market the Moletech Fuel Saver products to the global market.   (Kuo Decl. ¶ 14, Exh. A, ¶¶ 1.1, 1.2).   The Global Exclusive Distributorship Contract had an initial term of five years, and Moletech Global was required to meet certain purchasing targets every year.   (Kuo Decl. ¶ 14, Exh. A, ¶¶ 2.1, 2.2, 3.6).

1    The Global Exclusive Distributorship Contract contains a forum selection and choice of law

2    provision that provides: "This Agreement shall be governed and construed in accordance with the

3    laws of Taiwan, Republic of China, and the parties hereto submit to the non-exclusive jurisdiction to

4    Taiwan Taipei District Court."    (Kuo Decl. ¶ 15, Exh. A., ¶ 9.4).

5    Amendments to the Global Exclusive Distributorship Contract were made on February 20,

6    2008, May 9, 2008, July 17, 2008, and October 7, 2008.    (Kuo Decl. ¶ 16, Exhs. B, C, D and E).

7    On December 17, 2008, Pojery notified Moletech Global that the Global Exclusive

8    Distributorship Contract was being terminated due to Moletech Global's failure to meet the

9    purchasing targets under the contract.    (Kuo Decl. ¶ 17).

10    **D.    Moletech Global's Complaint**

11    On January 5, 2009, Moletech Global filed its Complaint against Pojery and Pottery.

12    (Docket No. 1).    The Complaint alleged that Moletech Global was a corporation organized and

13    incorporated under the laws of Hong Kong, with its primary place of business at 38F Lippo Centre,

14    Tower One, 89 Queensway, Hong Kong. (Complaint ¶ 1).

15    The Complaint alleges that Moletech Global fully performed its obligations under the Global

16    Exclusive Distributorship Contract, and met all purchasing targets.    (Complaint ¶¶ 22-32).    It

17    alleges that Pojery breached the Global Exclusive Distributorship Contract in several respects,

18    including ignoring Moletech Global's exclusivity rights (Complaint ¶¶ 33-42), misrepresenting and

19    breaching the warranties for the Moletech Fuel Saver produccts (Complaint ¶¶ 43-50), and failing to

20    deliver orders (Complaint ¶¶ 51-60).    Moletech Global also claims that Pojery improperly

21    terminated the Global Exclusive Distributorship Contract, seized control of the websites at

22    www.moletech.us and www.moletech.com, and intercepted Moletech Global's emails.    Based on

23    these allegations, Moletech Global has asserted a cause of action for breach of contract, and various

24    other claims.

25    **E.    Pojery's and Pottery's Counter-Complaint**

26    On April 2, 2009, Pojery and Pottery filed a Counter-Complaint against Moletech Global,

27    MTech Fuel Saver, Inc. ("MTech"), and Andrew Kelly.    (Docket No. 40).    The Counter-Complaint

28    alleged that the dispute arises out of Pojery's termination of Moletech Global's rights to distribute the

1   Moletech Fuel Saver due to Moletech Global's failure to meet contractual sales targets.   (Counter-

2   Complaint ¶ 1).   It further alleged that notwithstanding the termination of its distributorship rights,

3   Moletech Global, and its Chief Executive Officer and alleged alter-ego, Andrew Kelly ("Kelly"),

4   continued to sell the Moletech Fuel Saver products, both through Moletech Global and through an

5   affiliated corporation, MTech. (Counter-Complaint ¶¶ 1, 5-6, 9-16, 36).   It alleged that in the

6   process, the Counter-Defendants violated the Counter-Claimants' trademark and copyright rights, and

7   interfered with Counter-Claimants' business relationships.   (Counter-Complaint ¶ 1).

8         The primary counter-claim set forth in the Counter-Complaint was for breach of the Global

9   Exclusive Distributorship Contract.   It alleged that the "Counter-Defendants breached the Agreement

10   by: failing to meet their monthly purchasing targets under the Agreement; failing to timely provide

11   instructions, sales performance and reports to Counter-Claimants for the Moletech Fuel Saver; failing

12   to provide Counter-Claimants with 10% of the equity shares in Moletech Global; and by failing to

13   protect the MOLETECH trademark, goodwill, patents, and copyrights from infringement."

14   (Counter-Complaint ¶ 46).

15         **F.        Hearing on Motion to Dismiss Counter-Claims**

16         On June 11, 2009, the Court conducted oral argument on a motion by Moletech Global to

17   dismiss certain of the Counter-Claims.    (Declaration of James Cai in support of Motion to Dismiss

18   Based on Forum Non Conveniens, Exh. A.).

19         During oral argument, Plaintiff's counsel admitted that the Global Exclusive Distributorship

20   Contract contained a Taiwanese choice-of-law provision.   (July 11, 2009 Transcript at 37:13-16).

21   After reviewing the choice-of-law provision, the Court correctly observed that "the parties have

22   appeared to agree to the law of Taiwan."   (July 11, 2009 Transcript at 38:13-15). The Court then

23   stated:

24              I, frankly, don't know what the law in Taiwan is; but if that's what the
               parties agreed to, shouldn't we be discussing everything in that context of
25              what's available, what causes of action are available; or having some
               discussion as to why that part should be stricken or set aside from the
26              contract; or if there's a basis for now following the parties' wishes?

27   (July 11, 2009 Transcript at 39:5-11).

28

In light of the choice-of-law provision, the Court stated that the parties could "just dismiss this matter and refile it in Taiwan before the court that they agreed to, the Taiwan Taipei District Court."  (July 11, 2009 Transcript at 43:25-44:2).   The Court noted that it would be receptive to a forum non conveniens motion, and concluded its thoughts on the subject by stating that "it, frankly, looks like a case to me that shouldn't be here." (July 11, 2009 Transcript at 56:5-6).

### G.      The Pertinent Evidence in this Action is Located in Taiwan

Documents pertaining to the Moletech Fuel Saver and the dealings between Moletech Global and Pojery pursuant to the Global Exclusive Distributorship Contract, are all stored by Pojery at its office in Taipei, Taiwan. (Kuo Decl. ¶ 18).   Most of the subject documents are written in Mandarin Chinese, and it would be expensive and time-consuming to translate the documents into English. (Kuo Decl. ¶ 18).

### H.      All of the Key Witnesses Are Located in Taiwan or Asia

The key witnesses in this action will be Weiling Kuo and Ken Kao-Hao Chang on behalf of the Defendants, and Andrew Kelly on behalf of the Plaintiffs.   (Kuo Decl. ¶¶ 19, 22).   These are the individuals who negotiated the Global Exclusive Distributorship Contract, and have knowledge of the performance of the contract, the alleged breaches of the contract, and the resulting damages. (Kuo Decl. ¶¶ 22, 25).   Ms. Kuo and Mr. Chang both reside in Taiwan, and it would be cheaper and more expedient for them to attend trial in this action in Taiwan, than to travel overseas to California to do so.   (Kuo Decl. ¶ 20).   Although Ms. Kuo and Mr. Chang would be willing to testify in California if necessary, they might not be able to come to California as they have not been able to obtain a U.S. visa which is required for them to enter the United States.   (Kuo Decl. ¶ 20).   Also, Ms. Kuo and Mr. Chang are not fluent in English, and would require an interpreter in order to testify in California.   (Kuo Decl. ¶ 21).   Taiwan would also be a more convenient location for Mr. Kelly who resides in Hong Kong and Australia, both of which are closer to Taiwan than to California. (Kuo Decl. ¶ 24).

The parties' Initial Disclosures identified four other individuals who may be expected to testify in this action: Jack Sun, Shi-Fan Huang, Bill Greenwald, and Terrence Wu. (Kuo Decl. ¶¶ 19,

24).   These individuals are all expected to be minor witnesses, and reside in either California or

Taiwan.   (Kuo Decl. ¶¶ 23, 26-28).

### I.      Adequacy of Taiwanese Forum

In the event that this action is dismissed in favor of a Taiwanese court and Moletech Global

elects to bring suit against Pojery and/or Pottery in Taiwan , Pojery and Pottery have agreed to: waive

any applicable statute of limitations; submit to the jurisdiction of a Taiwanese court; and pay any

final, post-appeal judgment awarded by a Taiwanese court.   (Kuo Decl. ¶ 29).

### III.   ARGUMENT

#### A.      Standard on Motion to Dismiss Based on Forum Non Conveniens

This Court has discretion to decline to exercise jurisdiction in a case where litigation in a

foreign forum would be more convenient for the parties.   *See Gulf Oil Corp. v. Gilbert*, 330 U.S.

501, 504 (1947).   In dismissing an action on forum non conveniens grounds, the court must examine:

(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public

interest factors favors dismissal.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981);

*see also Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993);

*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991).

A forum non conveniens determination is committed to the sound discretion of the district

court.   *See Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998);

*see also Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995).   The District

Court's decision "may be reversed only when there has been a clear abuse of discretion; where the

court has considered all relevant public and private interest factors, and where its balancing of these

factors is reasonable, its decision deserves substantial deference." *Creative Tech.*, 61 F.3d at 699; see

also *Ceramic Corp.*, 1 F.3d at 949.

#### B.      Taiwan Provides an Adequate Alternative Forum

"At the outset of any forum non conveniens inquiry, the court must determine whether there

exists an alternative forum.   Ordinarily, this requirement will be satisfied when the defendant is

amenable to process in the other jurisdiction."   *Piper Aircraft*, 454 U.S. at 255, n. 22 (internal

quotation marks omitted); *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001)

1    ("The Supreme Court has held that an alternative forum ordinarily exists when the defendant is

2    amenable to service of process in the foreign forum.").

3            In the present case, both Moletech Global and Pojery agreed in the Global Exclusive

4    Distributorship Contract to submit to the jurisdiction of the Taiwan Taipei District Court, and Pottery

5    has also agreed that it will submit to jurisdiction in Taiwan.   In addition, both Pojery and Pottery

6    have agreed to waive any Taiwanese statute of limitations that would impact this case.   This is

7    sufficient to establish that Taiwan is an adequate alternative forum, particularly as there is no

8    evidence indicating that a remedy offered by the Taiwan Taipei District Court would be "clearly

9    unsatisfactory."   *Piper*, 454 U.S. at 255, n. 22.

10           In considering whether Taiwan provides an adequate alternative forum, the Court should give

11   little deference to Plaintiff's choice of a California forum, since Plaintiff is a foreign corporation.

12   *See Piper Aircraft*, 454 U.S. at 256 ("[A] plaintiff's choice of forum is entitled to greater deference

13   when the plaintiff has chosen the home forum.... When the home forum has been chosen, it is

14   reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, the

15   assumption is much less reasonable.") (citation omitted); *see also Van Schijndel v. Boeing Co.*, 434 F.

16   Supp. 2d 766, 774 (C.D. Cal. 2006) ("In the case of a foreign plaintiff, the choice of forum 'deserves

17   less deference' than that of a citizen plaintiff, and therefore less showing is required to obtain a *forum*

18   *non conveniens* dismissal.").   Indeed, in the instant case, it appears that Plaintiff chose a California

19   forum, in spite of the fact that it had little or no relation to the action, in order to disadvantage Pojery,

20   and/or to take advantage of more favorable American procedural or substantive rules.   *See generally*

21   *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000) ("There are two types of cases in which

22   forum non conveniens dismissals have been deemed appropriate in federal court.   In the first type,

23   now rarely encountered, a foreign or domestic plaintiff chooses a forum with little or no relation to

24   either the defendant or the action in order to disadvantage the defendant.   In the second type, now

25   more commonly encountered, a foreign plaintiff chooses the home forum of an American defendant

26   in an action that has little or no relation to the United States in order to take advantage of more

27   favorable American procedural or substantive rules.") (citations omitted).

28           **C.**      **Public Interest Factors Favor Dismissal in Favor of Taiwan**

In determining whether to dismiss on forum non conveniens grounds, the "public interest factors" to be considered, include "court congestion, the unfairness of burdening citizens in an unrelated forum with jury duty, the interest in having localized controversies decided at home, the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of law."  *Ravelo Monegro*, 211 F.3d at 512 (citation omitted).   As demonstrated herein, each of these factors weighs in favor of dismissal, including in particular this Court's interest in not trying a case governed by Taiwanese law.

               1.     **The Need to Apply Taiwanese Law Weighs Heavily in Favor of Dismissal**

"Many *forum non conveniens* decisions have held that the need to apply foreign law favors dismissal."  *Piper Aircraft*, 454 U.S. at 260 (collecting cases).   These decisions apply with equal force in the case at bar, and require dismissal of this action in favor of the Taiwan Taipei District Court, which will be familiar with the applicable Taiwanese law that governs the parties' dispute.

Pursuant to the Global Exclusive Distributorship Contract, the parties agreed that the agreement "shall be governed and construed in accordance with the laws of Taiwan, Republic of China."   The Ninth Circuit has found a similar choice-of-law provision to be clear and unambiguous. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) ("Here, the text of the Transfer Agreement, which provides that the agreement 'shall be governed by and construed under English law,' could not be clearer.").   Hence, the Global Exclusive Distributorship Contract's choice-of-law provision is enforceable, since Taiwan has a substantial relationship to the transactions at issue, as well as to the parties as Pojery is incorporated there.   *See id*. (stating that California courts will enforce express choice-of-law clauses if the chosen jurisdiction has a substantial relationship to the parties or their transaction, and following California law holding that "'the parties to a contract have a substantial relationship with the chosen state if one or more of them is incorporated there.'") (citation omitted); *see also Batchelder v. Kawamoto*, 147 F.3d 915, 918 (9th Cir. 1998) ("Contractual choice-of-law clauses are routinely enforced, particularly when the country whose law is selected has some nexus with the action.").   Further, the choice-of-law clause in the Global Exclusive Distributorship Contract mandates that Taiwanese law apply to all of the parties' claims, and not just the contract claims.   *See Hatfield*, 564 F.3d at 1183 ("'a valid choice-of-law clause, which provides that a

specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationship it creates.'") (citation omitted).

If the instant case is not dismissed, the Court would need to apply the Taiwanese law that the parties validly selected to govern their dispute pursuant to the express choice-of-law clause in the Global Exclusive Distributorship Contract.   This would be an arduous task as the Court is unfamiliar with Taiwanese law, and this factor weighs heavily in favor of dismissal of this action.   *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148 n. 6 (9th Cir. 2001) (finding that choice-of-law inquiry counseled in favor of dismissing suit based on the District Court's finding that if it retained jurisdiction, it "would likely be required to interpret and apply New Zealand law, law with which it is unfamiliar."); *see also Van Schijndel*, 434 F.Supp. 2d at 783 (need for court to interpret "law foreign to itself" … "weighs in favor of dismissal based on *forum non conveniens*.").

## 2.   The Controversy is Local to Taiwan and Should Be Tried in Taiwan

This case is a local controversy for Taiwan.   It involves allegations that a Taiwanese corporation, Pojery, breached its obligations under a contract that was entered into and performed in Taiwan.   In contrast, California has little interest in this dispute, since Plaintiff is not resident in California.   Moreover, the fact that Pojery's subsidiary, Pottery, is incorporated in California is a "random attenuation" that cannot defeat dismissal, as there is no allegation that any relevant products were manufactured or conduct occurred in California.   *See Creative Technology*, 61 F.3d at 704 (dismissing copyright action in favor of Singapore forum, and noting that the presence of a California defendant that was "a wholly-owned subsidiary of a Singapore corporation, influences our analysis very little."); *see also Lueck*, 236 F.3d at 1141 (affirming a forum non conveniens dismissal even though one of the defendants resided in the chosen forum).

## 3.   Dismissing in Favor of Taiwan Will Avoid Unnecessary Conflicts of Law

Dismissing this action in favor of a Taiwan forum is appropriate since it would allow the Court to avoid having to "untangle problems in conflict of laws, and in law foreign to itself."   *Gulf Oil,* 330 U.S. at 509.

1

2

      **4.**      **California Citizens Should Not Be Burdened with a Jury Dispute in a Dispute Involving Foreign Nationals**

3

4

Because California has little, if any, interest in this case, there is no reason to impose the burdens of trial and jury service on citizens of this forum.   *See, e.g., Gulf Oil*, 330 U.S. at 508-509

5

6

("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.   In cases which touch the affairs of many persons, there is reason for

7

holding the trial in their view and reach rather than in remote parts of the country where they can

8

learn of it by report only.   There is a local interest in having localized controversies decided at

9

home.").

10

      **5.**      **Court Congestion**

11

Regarding court congesting, "[t]he real issue is not whether a dismissal will reduce a court's

12

congestion, but whether a trial may be speedier in another court because of its less crowded docket."

13

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-1336 (9th Cir. 1984). Here, it is beyond dispute

14

that a speedier trial is available in Taiwan than the Northern District of California.   The median time

15

from filing to trial in the Northern District of California in 2008 was 30.0 months, *2008 Federal*

16

*Court Management Statistics* (Administrative Office of the United States Courts 2008); *see also In re*

17

*Air Crash Over the Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1202 (C.D. Cal. 2004)

18

("'It is beyond dispute that the docket of [the Northern District of California] is heavily congested.'")

19

(citation omitted).   In contrast, "completing a civil lawsuit in Taiwan at the district court level takes,

20

on average, between 76 to 86 days." *Air Crash Over the Taiwan Straits*, 331 F. Supp. 2d at 1202.

21

Accordingly, the court congestion factor also weighs in favor of dismissal.

22

23

      **D.**      **Private Interest Factors Also Favor Dismissal in Favor of Taiwan**

24

In determining whether to dismiss on forum non conveniens grounds, private factors to be

25

considered include "the relative ease of access to sources of proof, the availability of compulsory

26

process for unwilling witnesses, the comparative costs of obtaining willing witnesses, the possibility

27

of a view of any affected premises, the ability to enforce any judgment eventually obtained, and all

28

other practical problems that make trial of a case easy, expeditious and inexpensive." *Ravelo Monergo*, 211 F.3d at 512.   Each of these factors weighs in favor of dismissal.

### 1.     Relative Ease of Access to Sources of Proof

The majority of relevant evidence in this case is located in Taiwan, and can most easily be accessed there.   The Moletech Fuel Saver products were manufactured and packaged by Pojery in Taipei, Taiwan.   Documents pertaining to the Moletech Fuel Saver and the parties' contractual dealings are all stored at Pojery's office in Taipei.   To the extent a view of Pojery's manufacturing facility is relevant, it would be accomplished more easily if the action were litigated in Taiwan.   *See Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, 2003 WL 22682643, *8 (N.D. Cal. Nov. 10, 2003) (location of manufacturing facilities in foreign countries weighed in favor of forum non conveniens dismissal).   As such, this factor weighs in favor of dismissal.

### 2.     Availability of Witnesses

Defendants' two key witnesses will be its principals, Wei-Ling Kuo and Ken Kao-Hao Chang, both of whom are resident in Taiwan.   It would obviously be more expensive for Defendants to transport these witnesses overseas to California to testify, than to have them testify in Taiwan, and hence this factor weighs in favor of dismissal.   *See Van Schijndel*, 434 F. Supp. 2d at 779 ("unmanageable" costs of transporting the Singaporean witnesses to the United States weighed in favor of dismissal).   Furthermore, although Ms. Kuo and Mr. Chang are both high-level employees of Pojery and would be willing to cooperate in testifying in this District, they are unable to enter the United States due to visa problems.   As such, allowing the case to remain here could deprive the Defendants of the testimony of their key witnesses, a condition that is simply unacceptable.   *See generally*, *Gulf Oil Corp.*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants.").

### 3.     The Ability to Enforce Any Judgment Obtained

Defendants will agree to pay any final, post-appeal judgment awarded against them by a Taiwanese court.   Thus, this factor also weighs in favor of dismissal.   *See Van Schijndel*, 434 F. Supp. 2d at 779.

1

### 4.   Other Practical Problems

Many of the pertinent documents in this case are written in Mandarin Chinese, and it would be expensive and time-consuming to translate the documents into English.   Also, Defendants' key witnesses, Ms. Kuo and Mr. Chang, are not fluent in English and would need an interpreter to testify. These are significant impediments to a fast and efficient trial, and also weigh in favor of dismissal. *See Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (finding that dismissal in favor of German forum was appropriate because "[n]ot only is the district court unfamiliar with German law, were it to hear the case it would be required to translate a great deal of that law from the German language, with all the inaccuracy and delay that such a project would entail.").

## IV.   CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss this action on the ground of forum non conveniens.

Dated:   9/25/09

_____
SAUNDRA B. ARMSTRONG
UNITED STATES DISTRICT COURT JUDGE